UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLARENCE HUFF,

       Plaintiff,

v.                                   Case No:  2:13-cv-257-FtM-38DNF

REBBECA JACKSON and DONALD
SAWYER,

       Defendants.

_____/

### OPINION AND ORDER[1]

     Plaintiff Clarence Eugene Huff ("Plaintiff") initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1, filed April 4, 2013).   Upon the Court's direction, Plaintiff filed an amended complaint which is the operative complaint before the Court (Doc. 12, filed August 15, 2013).   This matter is presently before the Court upon review of the motion to dismiss Plaintiff's amended complaint filed by Defendants Rebecca Jackson and Donald Sawyer (collectively, "Defendants") (Doc. 37, filed April 17, 2014).   Plaintiff has filed a response to the motion to dismiss (Doc. 40), and the motion is now ripe for review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

For the reasons set forth in this Order, Defendants' motion to dismiss is **GRANTED**, and the complaint is dismissed without prejudice for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

## I.    Background and Procedural History

Plaintiff is a resident at the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida (Doc. 12). [2]   Plaintiff alleges that the defendants have violated his "First Amendment rights to freedom of speech, choice, expression, and press, under the Entertainment, Motion Picture, and Video Clauses of the Federal Constitution" by implementing a policy requiring movies and video games to be approved before a resident is allowed to view or possess them (Doc. 12 at 5).

---

[2] The Florida legislature enacted the Sexually Violent Predators Act, Florida Statute §§ 394.910-394.913, by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2).   The Act was promulgated for the dual purposes "of providing mental health treatment to sexually violent predators and protecting the public from these individuals.*" Westerheide v. State*, 831 So. 2d 93, 112 (Fla. 2002); *Kansas v. Hendricks*, 521 U.S. 346 (1997)(holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).   Civil commitment under the Act involves several steps.   First, the Act requires a mental evaluation of any person who has committed a sexually violent offense and is scheduled for release from prison or involuntary confinement.   *See generally* Fla. Stat. § 394.913.   The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator." After the evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act. *Id.*   If the judge determines the existence of probable cause that the individual is a sexually violent predator, then he or she will order the individual to remain in custody. *Id.* at § 394.915.   Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence. *Id.*   If the jury finds the individual to be a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." *Id.* at § 394.917.

The allegations of, and attachments to, the complaint state the following:[3]

On July 26, 2012, former FCCC director Timothy Budz posted on all the bulletin boards at the FCCC a memorandum written by Defendant Jackson, stating in pertinent part:

> It has come to my attention that there is some conflicting information regarding media that may be ordered through the package request process.   Specifically, the question has been whether Rated R movies may be ordered.   We all know that some Rated R movies are without objection while some PG or PG-13 movies may be quite inappropriate for the resident population.   This also true of books and video games.   In an effort to avoid blanket denial of all Rated R movies or video games or blanket approvals of inappropriate PG/PG-13 movies, all media requests must be approved by your case manager.
>
> Effective immediately, your package requests must be presented to your case manager.   Any movie, book, or video game will be individually approved or denied.

(Doc. 12-2 at 1) (emphasis in original).   On November 19, 2012, Defendant Jackson issued another memorandum explaining that a "Media Committee" had been established "to monitor the therapeutic appropriateness of media at our facility." (Doc. 12-2 at 2).

Defendant Jackson explained:

> Media that is pornographic, contains strong sexual, violent, and/or sexually violent content is not considered therapeutic in this environment.   Likewise, media that depicts minors sexually or has a primary audience consisting of children is not appropriate.   Media that promotes or encourages illegal

---

[3] The court may consider documents attached to the complaint or directly referenced in the complaint as part of the complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368-69 (11th Cir. 1997); *Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (Attachments to the complaint "are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument filed as an exhibit to a pleading is a part thereof for all purposes[.]").

> activity and/or poses a threat to the safety of the facility, staff, and/or residents is also prohibited.

(Doc. 12-2 at 2).   The memorandum explained the procedures a resident must follow to request media and provided for a grievance procedure if a resident believed that media had been unreasonably denied (Doc. 12-1 at 2).

Plaintiff asks this Court for an order directing the defendants to refrain from denying Plaintiff his "First Amendment Right to own, possess, or order any R-rated video, movie, video games, book, magazine, or publication allowed by law." (Doc. 12 at 7).

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 37).   In the motion, Defendants assert that Plaintiff has not alleged that Defendant Jackson ever actually denied Plaintiff the right to possess any media. *Id.*   Defendants also assert that Plaintiff is attempting to attribute liability to Defendant Sawyer under an impermissible theory of *respondeat superior. Id.* at 2-5. Defendants request that this Court dismiss Plaintiff's amended complaint and grant any other relief deemed proper and just. *Id.* at 4.

In his response to the complaint, Plaintiff clarified his claims and attached copies of the requests he had made to the FCCC media committee (Doc. 40).[4]

I.   **Legal Standards**

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint,

---

[4] The Court may consider Plaintiff's response and its attachments to the extent they clarify the allegations in his complaint. *See Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (using Plaintiff's response brief to clarify allegations in her complaint).   In addition, documents central to, or referenced, in a complaint may be considered in a motion to dismiss. *Horsely v. Feldt*, 304 F.3d 11325, 1134 (11th Cir. 2002).

and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in Plaintiff's amended complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)(discussing a Rule 12(b)(6) dismissal); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the *Twombly-Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott*, 610 F.3d 701, 708, n.2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 556 (2007); *Marsh*, 268 F.3d at 1036 n.16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal*, 556 U.S. 662, 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Because Plaintiff is proceeding *pro se*, the Court construes his complaint more liberally than had it been drafted by an attorney. *See Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

## II.    Analysis

### a.    Plaintiff has not set forth a First Amendment claim based upon the FCCC's revised media policy

Plaintiff appears to assert that the FCCC's requirement that residents get approval before they may possess or view certain media is unconstitutional on its face.   In *Turner v. Safley,* the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987).   The *Turner* court set out four factors to be used in determining the reasonableness of prison regulations: (1) the existence of a "valid, rational connection" between the regulation and a legitimate, neutral government interest; (2) the existence of alternative methods for the inmate to exercise his constitutional right; (3) the effect the inmate's assertion of that right will have on the operation of the prison; and (4) the absence of an obvious, easy alternative method to satisfy the government's legitimate interest. *Turner*, 482 U.S. at 89–91.

A modified application of the factors set forth in *Turner* has been used in the civil confinement context, recognizing that the legitimate government interests are narrower than in the prison context – i.e. "the government may not justify a limitation on expressive freedoms based on retribution or general deterrence." *Pesci v. Budz*, 730 F.3d 1291, 1298 (11th Cir. 2013); *see also Lane v. Williams*, 689 F.3d 879, 884 (7th Cir. 2012) ("Because *Turner* tells courts to consider the challenged regulation in relation to the government's legitimate interests, it would not be too difficult to adapt its standard for claims by civil detainees. To do so, courts would only have to recognize the different legitimate interests that governments have with regard to prisoners as compared with civil detainees.") (*dicta*).

As to the first *Turner* factor, the question that must be addressed is whether the FCCC's stated interest in therapy and rehabilitation of sexual predators is rationally related to the FCCC's restriction on certain media.   Defendant Jackson's memoranda reflect that the censorship of certain movies and other media at the FCCC is based upon the media's "therapeutic appropriateness" (Doc. 12-2 at 2).   Defendant Jackson explained that "[m]edia that is pornographic, contains strong sexual, violent, and/or sexually violent content is not considered therapeutic in this environment."   Defendant Jackson further noted that certain media involving children or posing a threat to the safety of faculty or residents would be prohibited. *Id.*   Because therapeutic and security concerns are legitimate interest of a mental health facility, the FCCC's media regulation has a "valid, rational connection" between the regulation and a legitimate, neutral government interest.   *Turner*, 482 U.S. at 89–91.

Plaintiff attaches to his complaint a November 19, 2012 memorandum from Timothy Budz, the former director of the FCCC, which states that there had been fourteen recent arrests of FCCC residents for the possession of child pornography (Doc. 12-1 at 1).   The memo noted that some people "outside FCCC" attributed the possession and sharing of child pornography to the center's liberal media policy. *Id.* Plaintiff suggests that the recent arrests of FCCC residents for possession of child pornography, not therapeutic concerns, was the real reason for the new media policy (Doc. 12 at 6).   The Court agrees that a mere desire for retribution cannot justify a limitation on expressive freedoms. *See Pesci*, 730 F.3d at 1298.    However, even if the adjustment in the media policy was *prompted* by the arrests of FCCC residents, the Court fails to see how the FCCC's concern that residents are being exposed to child

pornography or other inappropriate material is any less a valid security or therapeutic concern.   A treatment facility is not constitutionally required to maintain the status quo. Responding to security breaches and experimenting with changes designed to improve security and the therapeutic environment fall within the deference afforded to those running the facility.   *See Lingle v. Kibby*, 526 F. App'x 665, at *3 (7th Cir. 2013) ("We have observed, albeit in dicta, that the question whether a ban on speech is rationally related to legitimate institutional goals is 'an objective inquiry;' the subjective motives of those who implement the ban should not matter.").

The Court concludes that the FCCC's policy requiring prior approval before a resident is allowed to possess certain media is rationally related to the state's legitimate interest in maintaining institutional security and a therapeutic treatment environment. The state's interest in providing comprehensive treatment to sexually violent predators outweighs Plaintiff's interest in viewing counter-therapeutic material which could interfere with his treatment program or which could ultimately endanger the public, FCCC residents, and staff.   Accordingly, the first *Turner* factor weighs in favor of the defendants.

Plaintiff's amended complaint also fails to allege sufficient facts to demonstrate that the other *Turner* factors weigh in his favor.   Other than insisting that he is entitled to possess or view *any* legal R, PG-13, PG, or G rated movie or video game without restriction, Plaintiff does acknowledge the FCCC's security concerns and does not suggest an alternative method for censorship review of the media.   Notably, the FCCC's July 26, 2012 memorandum specifically stated that the media policy was designed to <u>avoid</u> a blanket denial of R-rated movies and was designed to limit the amount of

restricted media.   Likewise, the November 19, 2012 memorandum provided for both a review of material that a resident wished to receive and a grievance process should the resident disagree with a restriction (Doc. 12-2 at 1; Doc. 12-1 at 2).   Finally, even if certain media is restricted from Plaintiff due to the FCCC's security concerns, he has available alternatives to exercise his First Amendment rights.   Although Plaintiff asserts that "90% [of his] requests are denied," (Doc. 12 at 5), a review of the lists provided by Plaintiff shows that the majority of Plaintiff's media requests to date have been granted (Doc. 40-2).   Moreover, Plaintiff was provided a short explanation for each media request that was denied (Doc. 40-2).   Plaintiff does not assert that the reasons for each denial were incorrect or that he utilized the grievance process for the material to which he was denied access. *See Singer v. Raemisch*, 593 F.3d 529, 539 (7th Cir. 2010) (banning of fantasy role playing games was rationally related to legitimate penological interests, and prisoner had alternative means of exercising right, such as possessing other reading materials or playing allowable games).

In sum, the FCCC's restrictions on movies and video games pass constitutional muster, and other district courts to have addressed similar First Amendment claims have reached the same conclusion. *See e.g. Lewis v. Phillips*, Case No. 10-cv-3163, 2014 WL 1283048 (C.D. Ill. March 28, 2014) (blanket prohibition on R-rated videos for civilly committed sexually violent predators was rationally related to legitimate safety, therapeutic, and staffing concern*); Allen v. Mayberg*, Case No. 1:06-cv-01801, 2013 WL 3992016 (E.D. Cal. Aug. 1, 2013) (civil commitment facilities have legitimate interest in prohibiting sexually violent predators from viewing R-rated movies); *Martin v. Richards*, Case No. C09-5733RBL/JRC, 2010 WL 2650547, at *1 (W.D. Wash. June 2,

2010) ("Preventing a sexually violent predator from watching R-rated television does not violate his constitutional rights."); *Burch v. Jordan*, Case No. 07-3236, 2010 WL 5391569, at *21 (D. Kan. Dec. 22, 2010) (a civil commitment center for sexually violent predators "has a legitimate treatment interest in restricting publications depicting nudity or pictures of children in general."); *Hedgespeth v. Bartow*, Case No. 09–cv–246–slc, 2010 WL 2990897, at *6–*9 (W.D. Wis. July 27, 2010) (media policy banning personal computers, certain movies, certain video games and gaming systems, and limited internet usage, instituted at center that civilly detained sexually violent predators was reasonably related to legitimate institutional concerns).

Plaintiff's construed claim that the FCCC's media policy is unconstitutional on its face is dismissed on the ground that Plaintiff has not stated a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

### b. Plaintiff has not stated a claim based upon the specific unconstitutional actions of Defendants Sawyer or Jackson

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint make "a a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Plaintiff argues that Defendant Jackson is the supervisor of the media committee and "has final say to the media Committee members as to what can and cannot be approved." (Doc. 40 at 2). However, Plaintiff does not specifically point to an instance in which his own constitutional rights were violated by the media committee or by Defendant Jackson personally. Likewise, Plaintiff asserts that Defendant Sawyer is liable because "when a person in authority has control over a facility such as FCCC, they have control over any internal committees, and or their supervisors." *Id.* at 3. Plaintiff makes no additional allegations against these defendants other than to argue that

Defendant Jackson posted the memoranda describing the new policy and that Defendant Sawyer "continues to allow the denial of Plaintiff's First Amendment rights of the Federal Constitution[.]" (Doc. 12 at 6).

To the extent Plaintiff's amended complaint can be interpreted to assert that an unnamed media committee member unconstitutionally restricted his access to specific permissible media, he has not stated a claim.   Although Plaintiff asserts that both defendants are liable for the unconstitutional actions of the members of the media committee, he is mistaken.   A defendant cannot be held liable under § 1983 based solely on the theory of *respondeat superior* or vicarious liability. *Hyland v. Kolhage*, 267 F. App'x 836, 841 (11th Cir. 2008); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Supervisory liability can be established only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotations omitted).   When determining whether there is a causal connection between a defendant's action and the alleged deprivation of a constitutional right, mere knowledge of a potential deprivation is not sufficient to impose liability on a supervisor. *Iqbal*, 556 U.S. at 677.   Rather, in order to state a claim against the supervisor, the plaintiff must allege purposeful action by the supervisor to deprive plaintiff of a constitutional right. *Id.*   At no point in his complaint does Plaintiff allege that Defendant Sawyer of Defendant Jackson personally participated in an active plan to deny him access to permissible media.

As discussed above, the media policy at issue is not unconstitutional. *See* discussion *supra* Part II(a).   Therefore, neither defendant is liable for creating, promoting,

or enforcing the policy.   Likewise, Plaintiff has not alleged any personal unconstitutional conduct on the part of either defendant.   Accordingly, the claims against Defendants Sawyer and Jackson are dismissed pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.   Conclusion

Construing all allegations in the amended complaint in Plaintiff's favor, he has failed to state a claim that the challenged FCCC media regulation is unconstitutional on its face or that any defendant acted unconstitutionally.

Accordingly, it is now **ORDERED**:

1.     The Motion to Dismiss filed by Defendants Sawyer and Jackson (Doc. 37) is **GRANTED.**   All claims against these defendants are dismissed for failure to state a claim upon which relief may be granted;

2.     The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of July, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:   OrlP-4
Copies: Clarence Eugene Huff
Counsel of Record